**Lyda Belle GOINS, Executrix of the estate and surviving spouse of Huston Goins, Deceased, Individually and on behalf of all others similarly situated, Plaintiff,**

v.

**TEAMSTERS LOCAL 639—EMPLOYERS HEALTH AND PENSION TRUST, et al., Defendants.**

**Civ. A. No. 83–2811.**

United States District Court, District of Columbia.

Nov. 27, 1984.

Burton D. Fretz, National Senior Citizens Law Center, Washington, D.C., Charles Sabatino, Esquire Legal Services of Northern Virginia, Arlington, Va., Neal S. Dudovitz, National Senior Citizens Law Center, Los Angeles, Cal., for plaintiff.

Charles R. Both, Yablonski, Both & Edelman, Washington, D.C., for defendants.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

This matter comes before the Court on the parties' cross motions for summary judgment on the question of whether the defendants, the Teamsters Local 639—Employers Health and Pension Trust ("Trust") and its Trustees, violated their fiduciary duty to Huston Goins, a now-deceased beneficiary of the disability Pension Plan ("Plan") administered by the Trust.[1] The plaintiff is Lyda Belle Goins, the surviving spouse of Huston Goins, and the executor

1. The complaint also named the Drivers, Chauffeurs & Helpers, Local Union No. 639 and its business agent, James Woodward, as defendants. The complaint charged these defendants with breach of the duty of fair representation, violations of the Employee Income Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1140 and 1141, and breaches of various common law duties. The Court granted summary judgment in favor of the defendants with respect to these claims on April 12, 1984.

of his estate. She charges that the defendants acted in an arbitrary and capricious manner in amending the Plan's criteria for monthly disability benefits, which deprived her deceased husband of disability coverage. She brings this action on behalf of her husband's estate and on behalf of other similarly situated individuals.

The first count of the complaint alleges that the defendants have violated section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1) and section 302(c)(5) of the Labor Management Relations Act ("Taft-Hartley Act"), 29 U.S.C. § 186(c)(5).[2] For the reasons set forth below, the Court determines that the plaintiff is entitled to summary judgment on this count.

## FACTUAL BACKGROUND

The material facts in this case are undisputed. In 1953, Huston Goins began work as a machinist for the Virginia Concrete Company in Springfield, Virginia. He became a participant in the Plan in 1972. At that time, the Plan afforded a number of employee benefits, including a monthly disability pension. Article V of the Plan stated that:

[a]n Employee shall be eligible for a disability benefit when he is a Participant in the Trust at the time of disability; *has completed 5 continuous consecutive years of participation in the Trust;* has been totally disabled for at least 6 months; has submitted proof of disability and has been judged by the Trustees to be totally and permanently disabled.

Ex. A at 13–14, attached to Declaration of Simone Ornold (Vice President, Carday Associates, Trust Administrator), filed July 25, 1984.

2. The defendants have moved for summary judgment on Counts II, III, and IV of the complaint, which allege violations of various substantive provisions of ERISA. The plaintiff has not opposed this motion, and the Court agrees that the defendants should prevail on these counts.

The continuous participation requirement, otherwise known as the credited service requirement, presents the central issue in this case. As of 1977, Mr. Goins had obtained five years of credited service under the Plan. However, when he applied for disability benefits in 1980, he no longer satisfied the service requirement because the Trustees had amended the Plan to increase the credited service requirement from five to ten years. This change occurred in conjunction with various other revisions, not material to this case, when the Plan was amended to comply with ERISA. The background of the Trustees' adoption of the credited service requirement is described below.

It is undisputed that an actuarial valuation of the Plan provided the initial impetus for the new credited service requirement. The Minnesota Mutual Life Insurance Company, the Trust's actuary, prepared this valuation report as of January 1, 1977, and submitted it to the Trustees. According to the report, "[d]isability experience under this plan has proven to be much heavier than we expected.... Moreover, it appears that this high level of disability incidence has been present in prior years also.[3] We have changed our disability rate assumption to reflect the higher rates." Ex. C at 13–14, Ornold Dec. In the transmittal letter of June 9, 1977, the actuary expressed concern about the current Plan's "provisions [for] full benefits to short-service employees." *Id.* Nevertheless, the actuary did not recommend any changes in the pension eligibility requirements.

Next, the record reflects that the Trustees adopted the credited service amendment, in addition to other changes, at a special meeting held on March 9, 1978. Ex. C, Connors Dec. The purpose of the meeting was to consider revisions to the Plan, and submit a final Plan to the Internal Revenue Service. Consultants from the Martin E. Segal Company attended the meeting. The Trustees hired the consult-

ants to assist them in revising the Plan. At the meeting, the company's representatives brought the increased requirement of credited service to the attention of the Trustees, and stated that the new criteria made the Plan's disability requirements commensurate with those of other plans. *Id.* at 2.

Although the Trustees did not issue a contemporaneous statement describing the purpose of the amendment, the minutes of the meeting, coupled with the actuarial report, show that the amendment was in part approved as a cost-saving measure. The Trustees were concerned that disability benefits *in general* were more expensive than they had originally anticipated, and they were informed that the credited service requirements of other pension plans were more stringent. In addition, the defendants have also suggested that the amendment was designed to bring disability benefits in line with retirement benefits, which could only be awarded after a minimum of ten years of service. Connors Dec. at ¶ 9.

The record also shows that the Trustees firmly intended the amendment to become effective three months after its adoption, without regard to the number of years of credited service already obtained by a pension applicant when the amendment was adopted. They have acknowledged that they did not calculate the number of individuals, like Mr. Goins, who had obtained at least five years of service under the terms of the previous plan. Defendants' (Trust and Trustees) Answers to Plaintiff's First Set of Interrogatories, No. 19, filed March 2, 1984. Nor did they specifically consider the alternative of excluding such individuals from the reach of the amendment. *Id.*, Interrogatory No. 9.

This conclusion is also supported by the information contained in the 1977 actuarial plan on which the disability revision was based. The actuarial report contained in-

---

**3.** According to the figures submitted by the defendants, the Trust awarded between 12 and 34 disability pensions in any given year between 1973 and 1977. Ornold Dec. at ¶ 7. These claims were approximately twice as high as originally anticipated. *Id.* at ¶ 8; Ex. C at 2, attached to Declaration of Joseph Connors (Trustee), filed July 25, 1984.

formation about the number of individuals who submitted disability claims, categorized by age. The report did not categorize these claims on the basis of number of years of service. A 1979 actuarial report, prepared by the Martin E. Segal Company *after* the Trustees adopted the amendment, was the first to provide a breakdown of participants by age and years of service. Supplemental Ornold Dec. at ¶ 3, filed Oct. 30, 1984.

On July 3, 1980, two years after the Plan was amended, Mr. Goins applied for a disability pension benefit. At that time, he had accumulated 7.4 years of credited service. One month later, the Trustees denied his application solely because he had not accumulated ten years of credited service. It is undisputed that Mr. Goins was disabled within the meaning of the Plan and would have received benefits under the credited service provisions of the previous plan.

Although the Trustees declared that Goins was ineligible for monthly disability benefits, they awarded him a lump sum benefit of $622. He immediately pursued an appeal of the denial of monthly benefits, which was rejected on September 22, 1980. He died on September 19, 1983, and this litigation ensued on September 22, 1983.

## LEGAL ANALYSIS

The legal standard for review of the Trustees' denial of benefits to Mr. Goins is whether their action is "arbitrary and capricious" within the meaning of section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1) and section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5). As this Circuit has stated:

> trustees [are permitted] broad discretion to choose among rational alternatives in setting eligibility standards for beneficiaries ... [but] there are substantive limitations on the range of eligibility rules trustees may devise to govern benefit entitlement.

*Saunders v. Teamsters Local 639, Employees Pension Trust,* 667 F.2d 146, 148 (D.C.Cir.1981) (interpreting 29 U.S.C.

§ 186(c)). In short, these eligibility criteria "must be justified by some rational nexus with the fund's purpose." *Id.*

The specific issue presented for the Court's consideration in this case is a narrow one: whether it was unreasonable for the Trustees' to apply the disability amendment to all participants in the Plan, without regard to whether they had already satisfied the credited service requirement of the previous Plan. The question is *not* whether the rule is *per se* arbitrary or unreasonable. *See Saunders,* 667 F.2d at 149; *Lavella v. Boyle,* 444 F.2d 910, 912 (D.C.Cir.), *cert. denied,* 404 U.S. 850, 92 S.Ct. 84, 30 L.Ed.2d 89 (1971). Nor need the Court address whether the Trustees could have applied the rule to Plan participants who had achieved five years of credited service, if they had explained their reasons for applying the rule in this fashion. Instead, the Court need only examine whether Mr. Goins had an interest in the receipt of disability benefits under the Plan which was deserving of protection, and if so, consider the sufficiency of the Trustees' justification for applying the amendment to Mr. Goins and others like him. *See Saunders,* 667 F.2d at 148–49. The Court examines each of these considerations in turn.

### A.

### The Protectible Interest of Plan Beneficiaries

A number of decisions from this Circuit have evaluated the interests of pension plan participants who were refused benefits because of changes in the criteria for benefits. *See e.g., Stacey v. Combs,* 671 F.2d 602 (D.C.Cir.1982); *Saunders, supra; Lavella, supra.* In general, courts have found that beneficiaries have interests deserving of protection if they have already satisfied previous benefit criteria. For instance, in *Saunders,* 667 F.2d at 147, the Court found a protectible pension interest for a plaintiff who involuntarily retired from employment due to ill health, and who met all but one of the requirements for

benefits at the time he retired. *See Stacey,* 671 F.2d at 603–04.

In holding that the application of the changed eligibility requirements to the plaintiff was arbitrary and capricious, *Saunders* focused on two major factors in the plaintiff's employment status: the fact that he had involuntarily left the industry, *id.* at 150, and the fact that he met all of the outstanding eligibility requirements—except age—at the time the criteria were changed. *Id.* at 151. Specifically, the plan in question required that the plaintiff reach the age of 60 before he was eligible for benefits. Although the plaintiff was not yet 60 when he retired, if he had lived to age 60 *and* the rule had remained the same, he would have received benefits. Before he reached the age of 60, however, the plan was amended so that he no longer satisfied the requirements for benefits.[4]

The facts of Mr. Goins' employment history suggest that he fits squarely within the relevant factors identified in *Saunders.* First, he met all but one of the Plan's eligibility requirements at the time it was amended. He lost something of value when the Trustees changed the eligibility rule for monthly disability pensions. Before the rule was changed, he met all of the requirements for a pension. If he had become disabled prior to the amendment, he would have been entitled to a valuable benefit in the form of a monthly disability pension.

Second, Mr. Goins left employment because he was disabled, a condition which was totally beyond his control. The scope of the amendment does not come under the narrow permissible exception for rules which deter voluntary departures from employment. A revised rule may pass muster if it "discourages workers from taking *voluntary* action that shifts the burden of supporting the [f]und to other employees, for instance by retiring early, by leaving

the industry, or by working for noncontributing employers." *Saunders,* 667 F.2d at 150–51 (*citing Robinson v. UMW Health and Retirement Funds,* 640 F.2d 416, 421 (D.C.Cir.1980) (emphasis in original), *rev'd on other grounds,* 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982)). Here, Mr. Goins retired involuntarily, and possessed a protectible interest which could not be summarily revoked by the Trustees without an adequate explanation.

The finding that Mr. Goins possessed an interest deserving of protection is not undercut by several minor differences between his employment situation and the facts of other decisions involving the propriety of changes in employee benefit criteria. First, the defendants argue that the Trustees properly applied the amendment to Mr. Goins because unlike the pension plan revisions in previous cases, the amendment did not involve an age requirement. Second, they argue that the nature of the benefits in question—disability benefits—are distinguishable from retirement benefits which have been examined in earlier case law. They suggest that disability pension benefits may be altered unilaterally because such benefits are not vested—or nonforfeitable—rights within the meaning of ERISA. Taken to its logical conclusion, this second argument amounts to an assertion that amendments to disability plans, unlike retirement plans, are immune from meaningful judicial review.

Neither of these assertions withstands analysis. The extent to which a pension plan participant has satisfied the benefit criteria bears on the degree of deference which should be paid to a decision to revise those criteria. *See Short v. United Mine Workers of America 1950 Pension Trust,* 728 F.2d 528, 538 (D.C.Cir.1984). Mr. Goins, like the plaintiffs in other decisions reviewing the reasonableness of pension

---

**4.** In *Saunders,* once the pension plan was amended the plaintiff lost any future opportunity to receive benefits. Mr. Saunders had already left the plan when its eligibility provisions were amended to require that a participant must have participated in the plan at or after

the age of 60 in order to receive benefits. Since Saunders was disabled and could not return to work, the amendment effectively deprived him of any future right to benefits. 667 F.2d at 147–48.

plan revisions, met all but one of the requirements for receiving benefits under the Plan. The fact that he failed to satisfy the disability requirement prior to the revision, rather than an age requirement, does not alter the conclusion that he had a protectible interest.

■ Furthermore, the type of pension right asserted in this case does not insulate the Trustees' decision from judicial review. Review of pension fund revisions is not limited to changes which affect vested or nonforfeitable pension rights. As noted in *Short*, 728 F.2d at 538, "[i]n no sense do [our previous] opinions purport to apply a concept of 'vesting' (or nonforfeitability) as embodied in ERISA." Rather, the relevant inquiry is whether the change affects an employee's right to mature his pension eligibility, in other words, the opportunity to apply for and receive pension benefits. *Short*, 728 F.2d at 538 (citing *Lavella*, 444 F.2d at 912 n. 3). Here, the eligibility revision had an impact on Mr. Goins' opportunity to meet the pension criteria, and the propriety of the revision may be considered by the Court.

Lastly, the amendment not only deprived Mr. Goins of an expected benefit, it indiscriminately denied benefits to all individuals who had obtained more than five years of service and less than ten years of service prior to the change. The wide scope of the amendment is illustrated by the fact that it was intended to reach even individuals with *nine* years of credited service, as long as those individuals became disabled more than three months after the amendment was adopted. Such a result would be unconscionable.

## B.

### Sufficiency of the Justification for the 1978 Amendment

■ Once a beneficiary acquires a protectible interest, the Trustees must offer an explanation for any revision which deprives him of that interest. At a minimum, their justification must describe how the application of the revised eligibility standards to the interested beneficiaries advances a rational purpose of the pension fund. *Saunders*, 667 F.2d at 148. *See Elser v. IAM National Pension Fund*, 684 F.2d 648, 655–57 (9th Cir.1982), *cert. denied*, —— U.S. ——, 104 S.Ct. 67, 78 L.Ed.2d 82 (1983).

Here, the record reflects two concerns on the part of the Trustees. First, the record shows that they were apprehensive about the rising cost of disability benefits in general, based on the unexpected number of applications for benefits which they had received in recent years. Second, the Trustees attempted to make the Plans' disability benefit criteria commensurate with the Plan's requirements for retirement benefits and the criteria of other similar plans. They understood that other plans required participants to acquire at least ten years of credited service before qualifying for disability or retirement benefits.

The amendment to the Plan was undoubtedly intended to resolve these concerns. The increase in the numbers of years of credited service obviously made the disability criteria commensurate with the retirement criteria. Moreover, the fiscal purpose was furthered by the amendment because applications for disability benefits would obviously decrease under its more stringent provisions.

The Trustees, however, did not explain why they applied the more stringent criteria to individuals with more than five years of credited service, or how the inclusion of these individuals advanced the purpose of the fund. In fact, the defendants have admitted that they possessed no data concerning the number of individuals with at least five years of service,[5] or the number of disability claims filed by such individu-

---

**5.** This conclusion is not undercut by the statement of one of the trustees that he personally believed that "it was likely that a large number of active employees would be in that category [of individuals with more than five years of covered service]." Supplemental Declaration of Joseph Connors at ¶ 3, filed Oct. 30, 1984. More than mere speculation is required to support the policy change adopted here.

als. These figures were necessary in order to determine whether the new criteria should be applied to individuals like Mr. Goins.

The Trust's current records indicate that since the amendment was adopted, approximately nine individuals with more than five years of credited service have been denied benefits for failure to satisfy the credited service requirement. Affidavit of Simone Ornold, attached to Opposition of the Trust and its Trustees to Class Certification ("Opposition to Class Certification"), filed Jan. 16, 1984. These *post hoc* figures are not directly relevant to whether the Trustees' initial decision was arbitrary and capricious. They do, however, indicate that any concerns about the large number of potential claims filed by individuals like Mr. Goins were completely unfounded.

■ The affidavits and legal memoranda of the defendants indicate that they did not attempt to obtain information about the size of this group because they did not believe that its members had legally protectible interests in the future receipt of disability benefits.[6] In view of this understanding, the Trustees applied the new rule to all employees, without regard to their status under the previous pension plan. This decision completely ignored the special interests of Mr. Goins and other individuals with five or more years of credited service. The Trustees' inattention to the interests of individuals with more than five years of credited service under the Plan was arbitrary and capricious within the meaning of the applicable law.

## CONCLUSION

The Court rules for the plaintiff and concludes that Huston Goins and his estate are entitled to monthly disability and ancillary health benefits from July 3, 1980, when Huston Goins first applied for such bene-

fits, continuing through September 19, 1983, the date of his death.

Counsel for the parties shall confer in an attempt to determine the amount of benefits due the plaintiff, and resolve the nature of class relief, if any, which should be granted. In the alternative, they should consider an order granting declaratory relief. If an agreement is reached, the parties shall submit a proposed order, consistent with this Memorandum Opinion, within ten days of this date. In the absence of an agreement, counsel for the parties shall submit separate proposed orders within fifteen days of this date.

An appropriate order and judgment accompanies this Memorandum Opinion.

## ORDER

In accordance with the Memorandum Opinion filed in this proceeding, it is

## ORDERED

That the Court grants the plaintiff's motion for summary judgment on the first count of the complaint charging that the 1978 amendment to the disability plan was arbitrary and capricious, and judgment is entered in favor of the plaintiff as to that claim.

That the Court grants the defendants' motion for summary judgment on the remaining counts of the complaint.

---

**6.** Oddly enough, a later actuarial report compiled a portion of this information in September of 1979, more than a year and a half *after* the decision to amend the Plan. This compilation revealed that in 1978, 29% of the active employees had more than five but less than ten years of covered service under the Plan. Ex. 1 at 5, attached to Supplemental Ornold Dec. The report did not indicate the numbers of disability claims filed by this group.